**Charles A. REDMAN, Appellant,**

v.

**EARLE M. JORGENSON COMPANY, a corporation, et al., Respondents.**

No. 56378.

Supreme Court of Missouri, En Banc.

March 12, 1973.

Lantz Welch, Kansas City, for appellant.

Thos. J. Conway, Popham, Popham, Conway, Sweeny & Fremont, Kansas City, for respondent Earle M. Jorgenson Company.

Gene C. Morris, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for respondent Chester A. Dean Construction Company.

SEILER, Judge.

Plaintiff appeals from the action of the trial court in directing a verdict against him at the close of plaintiff's case in his $250,000 personal injury claim. Jurisdiction is based on amount in controversy, as

the case was pending here January 1, 1972. We reverse and remand.

To enlarge and remodel its warehouse, Jorgenson Company, the owner, contracted with defendant Dean Construction Company to do the work. Dean Construction subcontracted the steel fabrication work, which included the erection of the steel girders, to defendant Bratton Corporation, which in turn engaged plaintiff, an independent structural engineer, to make field measurements of the distance between the horizontal steel members along the north wall of bay No. 1 of the existing warehouse, so that the corresponding members in the new extension to the east would "match up". To get what was needed, the measurements had to be made at or within a few feet of the corner of the warehouse from which the extension was to commence, as measurements farther away from the corner might vary due to settling of the building or other reasons. Plaintiff's claim was that in the course of making the measurements he was shocked and caused to fall by an uninsulated high voltage wire which powered Jorgenson's overhead electrical crane and as to which he had not been warned by the defendants.

One ground on which the trial court placed its ruling was that there was no duty on either the owner, Jorgenson, or the contractor, Dean Construction, to warn plaintiff of the wire.[1] No warnings were given by any of the defendants. The court also held plaintiff was guilty of contributory negligence as a matter of law.

Viewing the evidence most favorably to the plaintiff, there is evidence from which the jury could have found as follows: Plaintiff had been engaged by Bratton the day before to do the measuring. Bratton had a blueprint, went over with plaintiff what was wanted, and arranged for someone from Dean Construction to meet plaintiff on the premises, show him where the measurements were to be made and assist in the work. Plaintiff had never before been on Jorgenson's premises. He went there alone, equipped with a 50 ft. tape and a folding steel rule, and first located the superintendent for Dean Construction, the contractor, who took him to the area where the warehouse addition was to be made. Jorgenson employees were continuing to work in the warehouse and in the area where the measurements were going to be made. The Dean Construction superintendent pointed out where plaintiff should make the measurements, the northeast corner. At the time plaintiff noticed the crane beam above them, but saw no wires. He and the Dean Construction superintendent set up a 8–10 ft. ladder about three feet from the corner of the warehouse. The superintendent mounted the ladder while plaintiff held the tape on the floor and made the measurements. They reached the third or fourth member on the wall, a height of about 12–16 feet, when the superintendent said he would have to get a longer ladder and left, that " . . . we could go up this corner, but it would be easier and faster if we could get a longer ladder." Plaintiff waited 15–20 minutes for the superintendent to return before looking for him in the wrecking area outside the building where the Dean Construction people were demolishing an office. When he could not find him, plaintiff decided to complete the measurements himself by climbing up the corner of the horizontal members. There was testimony that to do this was easy, because "You have got like a ladder on each side of you actually." The members were I-beam sections, $3\frac{1}{2}$ to 4 feet apart, positioned flange out, providing both good handholds and footholds, and plaintiff pulled himself up from one set to another, made the measurements using a 6 ft. folding rule, and went on up to the next one. He would extend the rule from the member on which he was standing to the one above and measure. He stood with his left foot in the channel of

---

1. The trial court also ruled there was no duty to warn on the part of defendant Bratton Corporation, but plaintiff has not appealed as to this defendant.

the I-beam on the north wall and his right foot in the channel of the I-beam on the east wall, holding on with his left hand on the member next above him. He made two or three such measurements.

When he was at the highest position he reached, some 25–30 feet above the floor, standing on the member next below the crane beam, he saw a wire cable, dark and dusty, above the crane beam. It appeared to be a bare wire and he had a suspicion it might hurt him. It was about 4 inches back from the edge of the beam and was hidden from his view from below. He did not know the line was hot, there were no warning signs, no one gave him any warning about it, and if he had been warned he would not have gotten in that position. The closest he recalled getting to the wire was one or two feet. He was on the member for somewhere between a half to two minutes and as he was completing or had just completed his measurements, he heard a loud crackling, felt a jolt to the back of his head and fell from the wall to the floor, receiving severe injuries.

A witness familiar with the contracting business testified that when the job superintendent for the general contractor is dealing with an outsider such as an engineer or subcontractor coming on the job, the usual and customary practice is for the superintendent to observe the man to see that he is wearing proper clothing or equipment, check him to see that he is sober, and warn him of any particular hazards he might be going into while doing his job.

In McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., (Mo.Sup.) 323 S.W.2d 788, 794, plaintiff, an employee of an independent paint contractor was injured when he came in contact with an exposed 440 volt conduit while painting the McDonnell building. The court said:

"McDonnell did have a nondelegable duty to Hartman's employee, Arbuckle, with respect to the condition of its premises where he was to work and certainly to warn him of any condition there, unknown to him, that was not safe or could not be made safe. ('The servant working on his master's premises is a business visitor and entitled to the protection of one,' Prosser, [Torts, 2d Ed.] 374–376; and this obligation extends to the servants of an independent contractor working on the premises, Prosser, 374, note 6.) . . ."

Accord: Schneider v. Southwestern Bell Telephone Company, (Mo.App.) 354 S.W. 2d 315.

■ Under the law, defendant Jorgenson Company, as the owner and occupier of its warehouse, had a duty to warn plaintiff of the bare wire carrying electric power. Jorgenson was still occupying and using the warehouse generally. It should have foreseen that someone from the general contractor or someone arranged for by the general contractor, would be making measurements of the existing steel members at or near the northeast corner and that this would involve getting close to the wire unless warned against it.

As to the general contractor, Dean Construction, it too owed a duty to warn because, as stated in 13 Am.Jur.2d, Building and Construction Contracts, Sec. 135, p. 126, "A general contractor in control of a structure or premises owes to the employees of any other contractor rightfully thereon a duty to exercise ordinary care to keep the structure or premises in a safe condition for their use . . ." See also, annotation, 20 A.L.R.2d 868, "General contractor's liability for injuries to employees of other contractors on the project." Dean Construction Company pointed out where the measurements were to be made and in the exercise of reasonable care owed the same duty to warn of the dangerous wire as did the owner. The evidence was that the general contractor customarily does warn outsiders who come on the job as to hazards they might encounter

while performing their particular assignments.

We therefore hold that the trial court erred in ruling that there was no duty to warn on the part of defendants Jorgenson and Dean Construction.

On the issue of contributory negligence, we do not believe it can be said that reasonable men could not differ as to whether plaintiff failed to exercise ordinary care for his own safety. It was harder to go up the wall, but plaintiff was agile and strong enough to do it. The Dean Construction superintendent mentioned the possibility of climbing the wall in the corner. The I-beam or steel members were wide enough to provide firm footing. There is nothing to indicate that plaintiff fell because he lost his footing or handhold. Even had plaintiff been using a ladder, he still would have been 25 or 30 feet above the floor and in approximately the same position to make the final measurement as he was in doing it his way. The wire which he saw exposed was discolored and dusty and he says that he at all times remained from one to two feet away from it. It was for the jury to judge whether plaintiff was foolhardy and reckless on one hand or whether on the contrary he displayed initiative and drive to get on with the completion of the job and was at all times acting with ordinary reasonable care for his own safety. Accordingly, we rule the trial court was in error in ruling that plaintiff was guilty of contributory negligence as a matter of law.

Both appellants further argue that plaintiff has failed to support an essential element of his case by substantial and competent evidence. They support this argument by plaintiff's testimony that he did not touch the wire and by the absence of testimony regarding burns. Thus they maintain that without proof that electricity will arc and strike one to two feet away, their motion for a directed verdict at the end of plaintiff's case was well taken. We disagree. Plaintiff testified he did not slip or lose his footing, that just before he fell he heard a crackling sound and felt a jolt to the back of his head. This is sufficient evidence to make an issue for the jury on the connection between the wire and the fall.

Judgment reversed and remanded as to both defendants.

PER CURIAM:

The foregoing opinion by SEILER, J., which was written but not adopted in Division I is adopted as the opinion of the Court en banc.

FINCH, C. J., SEILER, MORGAN, and BARDGETT, JJ., concur.

HENLEY, J. dissents.

HOLMAN, J., dissents in separate dissenting opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

HOLMAN, Presiding Judge (dissenting).

I respectfully dissent because I am of the opinion that plaintiff was guilty of contributory negligence as a matter of law, and also because the negligence alleged was not the proximate cause of plaintiff's injury.

In briefly reviewing the facts we see that in completing the measuring project plaintiff chose a "human fly" type of procedure which involved climbing a vertical wall. He could not step from one girt to the next (because they were four feet apart) but had to pull himself up with his arms. In making and recording a measurement he had to hold onto one of the girts with one hand. In that precarious

position it can readily be seen that any slight misadventure would have caused plaintiff to fall. On the other hand, if plaintiff had not been so impatient he could have obtained a ladder and followed a much safer method. By following that method plaintiff would not have had to work in the corner and could easily have avoided any close contact with the wire. Moreover, if he had been on a ladder it is doubtful that he would have been shocked, and, if he had been it is more likely that he would not have fallen.

If all of plaintiff's testimony is to be accepted as true, it is necessary to accept as a scientific fact that the electricity arced or jumped at least one foot from this 440-volt line in order to enter plaintiff's body. In the absence of expert testimony to that effect, I would not accept that fact and would therefore conclude that he got much closer to the wire than he stated.

As indicated, it is my view that plaintiff was guilty of contributory negligence as a matter of law. I have not found any cases factually like this one but I think my conclusion is supported by the following cases: Coleman v. North Kansas City Electric Co., Mo.Sup., 298 S.W.2d 362, Burroughs v. Union Electric Co., Mo.App., 366 S.W.2d 69, and Hamilton v. Laclede Electric Cooperative, Mo.Sup., 294 S.W.2d 11.

The negligence relied on by plaintiff was failure to warn concerning the dangerous condition created by the exposed wire. It is my view that when plaintiff saw the bare cable he had all the knowledge that a warning would have imparted. He had considerable knowledge concerning electricity because his university study included a course on that subject. He testified that he thought the cable might possibly be dangerous. In that situation he should have avoided the cable and resulting injury and the failure of defendants to warn would not have been the proximate cause of his injury.

I would affirm the judgment.