**Paul GLASTRIS, by his next friend, Respondent,**

v.

**UNION ELECTRIC COMPANY and Southwestern Bell Telephone Company, Appellants.**

**Nos. 36909, 36910.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 17, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Nov. 8, 1976.

James E. Hullverson, Hullverson, Hullverson & Frank, Inc., St. Louis, for Paul Glastris.

Leo E. Eickhoff, Jr., John D. Rahoy, St. Louis, for Southwestern Bell Telephone Co.

Keefe, Schlafly, Griesedieck & Ferrell, Martin J. Toft, Jerry B. Wamser, Richard L. Adams, St. Louis, for Union Electric Co.

CLEMENS, Presiding Judge.

Action by child-trespasser for personal injuries from contacting electrical wires on a 20-foot utility pole. Plaintiff submitted his case under § 339, Restatement of Torts, the modification of the attractive nuisance doctrine. Defendant utility companies appeal from plaintiff's judgment, challenging the submissibility of his case and contending his verdict director was prejudicially erroneous.

Fourteen-year-old plaintiff Paul Glastris, admittedly a trespasser, received severe and extensive electrical burns by contact with defendant Union Electric Company's 7200-volt transmission line on a utility pole

owned by defendant Southwestern Bell Telephone Company.[1]

The initial issues on appeal are defendants' respective claims to a directed verdict, asserted lack of actionable negligence and plaintiff's contributory negligence. Additionally, defendants assert trial errors. We first consider the evidence relating to defendants' liability.

*The Evidence.* Plaintiff was injured on a hilly, wooded 78-acre tract in St. Louis County owned by defendant Parc Renaissance. A heavily populated residential area adjoins the wooded tract. Two sets of improvements are on the tract, one an abandoned, vandalized residence (the Steinbaum house) on the south 68 wooded acres; the other a pre-school nursery and horse stable across a creek on the north 10-acre pasture land.

Defendant Union Electric's 7200-volt transmission line in use since 1930 ran northward along its easement to the Steinbaum home, which it served before partial abandonment in 1967. Unknown to plaintiff, this line extended on northward where it still carried electricity to the nursery school. Defendant Southwestern Bell's telephone line, on the same line of poles, ran only to the Steinbaum house but had been out of service since the house had been abandoned.

Both of defendants' wires were attached to a series of 20-foot poles, owned by Southwestern Bell but used by both defendants under a "joint use agreement."

The south 68 wooded acres of the Parc Renaissance tract was partly unfenced. The woods had been used for several years by the general public and particularly so by people of the adjoining residential areas. The tract was laced with trails and pathways, one of which ran along the pole line. The whole area was used without protest, mostly by children, for such activities as hiking, horseback and motorbike riding, picnics, tree houses and camping.

Plaintiff Paul Glastris had often gone into the wooded area for varying boyhood purposes and had seen the pole line. On February 1, 1973 Paul and his friend David Germoth again went into the woods where they had been building a blind from which they could watch a nearby owl's nest. On the way they talked about an electrical insulator David had found and the value of antique insulators. As the boys neared the fateful pole they were aware of loose wires strewn on the ground. One wire dangled loose from the pole to the ground. They also saw wires running along the pole line with a frayed covering and attached to cracked insulators. They had seen some of the poles marked with a "SW Bell" decal. From what Paul saw he believed all the wires were telephone lines and had been abandoned. Unknown to Paul, Union Electric's transmission line was alive and carried current on beyond the abandoned Steinbaum house to serve the nursery school across the creek.

Paul decided to examine an insulator atop the pole to see if it was dated and antique. If so, he might have taken an insulator but had no tool to detach it.

The 20-foot pole was on sloping ground and was equipped with L-shaped climbing spikes, the lowest eight feet, eight inches above the ground. This pole was supported by an uninsulated guy wire extending from the ground to a bolt running through the pole at a point near the top. Due to retrograde amnesia, Paul could not recall how he reached the lowest climbing spike and his companion David was not watching then. But Paul did climb the pole. He stopped with his left hip against the guy wire bolt and reached toward an insulator. He last recalled his right hand being a foot away from the insulator. At that moment electricity sprang from Union Electric's wire into Paul's hand exited from his hip at the guy wire bolt and passed on down the guy wire to the ground.

Defendants' respective points relied on differ and we address them separately.

---

1. Verdict and judgment were against plaintiff as to defendant landowner, Parc Renaissance, Inc., and he does not appeal from that adverse judgment.

■ *Southwestern Bell's Liability.* Southwestern Bell contends the trial court erred in denying its motion for a directed verdict since it did not breach any duty it owed plaintiff-trespasser. That duty is no longer limited to the attractive nuisance doctrine which allowed recovery only when a dangerous condition induced a child to trespass in the first instance. That element of allurement has now been eliminated. Missouri now follows Restatement of Torts, 1st, § 339, which bases liability on the foreseeability of injury. *Anderson v. Cahill,* 485 S.W.2d 76[2] (Mo.1972).

■ Southwestern Bell contends it had no duty to plaintiff-trespasser since it had neither actual nor constructive knowledge of the potential danger to plaintiff arising from its pole on which defendant Union Electric maintained its own high tension wires, climbing steps and guy wire. The pole was in a heavily-wooded area, some 800 feet from a public road. It had last been used by Southwestern Bell for a telephone line to the Steinbaum residence, abandoned in 1967, some six years before plaintiff climbed the pole. There was not a word of evidence to show defendant Southwestern Bell ever actually knew of child trespassers using the wooded tract for any purpose.

Despite Southwestern Bell's lack of actual knowledge of trespassing children on the 68-acre tract, plaintiff contends it had constructive knowledge thereof. This, on the ground Southwestern Bell had a continuing duty to inspect its pole during the six years after it had abandoned its telephone line. Plaintiff bases this argument on the Restatement of Torts (1st) words of § 339(b) concerning a condition which the possessor knows *or should know.* The words "should know" in Restatement (1st) have been changed in § 339 Restatement (2d) to read "has reason to know." In its Comment, Restatement logically explains "the possessor is under no duty to make any investigation or inquiry as to whether children are trespassing, or are likely to trespass, until he is notified, or otherwise receives information, which would lead a reasonable man to that conclusion."

Commenting on the words "should know" in Restatement (1st), Dean Prosser in *Trespassing Children,* 47 Cal.L.Rev. 427 (1959), pp. 450–451, declared those words were an "error in drafting," and do not mean to impose a duty on an owner "to investigate and ascertain the facts," adding: "No case has ever held that the landowner is required to police his premises, or to make any inquiry, to discover whether there is a likelihood that children will trespass. On the contrary, the decisions are all agreed that unless he knows of the attractive character of the condition of his land, or of the past trespasses, or is at least chargeable with such knowledge, there is no liability. Given his knowledge of such facts, he is required to know as much as any ordinary man in the community about the habits of children, and their propensities to stray and intermeddle; but investigation or inquiry in the first instance is not demanded of him. The proper phrase, in the esoteric language of the Restatement, is 'has reason to know.' "

We consider the remote, mid-woods location of Southwestern Bell's pole, coupled with its complete lack of actual knowledge of trespassing children. The lowest climbing spike was eight feet, eight inches above ground level; the relatively inaccessible location of Union Electric's transmission line was 20 feet above ground. In *Donovan v. Union Electric Co.,* 454 S.W.2d 623[4, 8] (Mo.App.1970) we were confronted with an issue of an electric utility's liability concerning foreseeability of injury in a comparably remote area. In denying liability we held: "Based upon this evidence, we do not believe that a jury reasonably could have found that defendant, in the exercise of the highest degree of care, should have foreseen the reasonable likelihood that plaintiff would be [using] this isolated area so as to make contact with the defendant's transmission line."

So it is here. The evidence fails to show Southwestern Bell had reason to know of plaintiff's trespass or the probability of his being injured; hence, it did not breach a duty to plaintiff. We hold the trial court

erred in denying Southwestern Bell's motion *for a* directed verdict. Plaintiff's judgment against Southwestern Bell must be reversed. We do not reach that defendant's other points.

■ *Directed Verdict for Union Electric.* Defendant Union Electric contends the trial court erred in denying its motion for a directed verdict. This, on the limited ground plaintiff's evidence did not show he failed to realize danger "because of his youth." That is an essential element of plaintiff's case under § 339, Restatement of Torts (1st), requiring that "the children because of their youth do not discover the condition or realize the risk involved . . . ."

The onus of Union Electric's point is that by his own testimony plaintiff showed he was intelligent and understood the danger of electricity. From this premise Union Electric argues plaintiff failed to show the requisite element of "the childlike lack of comprehension of his danger *because of his youth*," citing *Salanski v. Enright*, 452 S.W.2d 143 (Mo.1970). We bear in mind the distracting factors that confronted Paul as he approached the point of danger and gave *him* a sense of safety—the downed telephone wires, the abandoned home, the deteriorated appearance of the power line and insulators and the absence of warning signs.

Although Paul abstractly knew of the *danger* of electricity, the factors confronting him tended to negate the *presence* of electricity. The Restatement comments to § 339 point out that even though young children may perceive a danger, their lack of judgment "may prevent them from realizing the full extent of the risk."

Counsel for Union Electric cite no authority for us to declare as a matter of law that Paul's youth was not a factor in exposing himself to danger. That would require a balancing of probabilities as to what an adult and a child would reasonably have done. We hold that is a jury issue. Compare *Boyer v. Guidicy Marble, Terrazzo & Tile Co.*, 246 S.W.2d 742[8–10, 12–14] (Mo. 1952). On the stated ground of plaintiff's

youth, the trial court properly denied Union Electric's motion for a directed verdict.

■■ *Proximate Cause.* Defendant Union Electric further challenges the submissibility of plaintiff's case against it. Its Point Relied On abstractly states: "The proximate cause of plaintiff's injury was the negligence of Southwestern Bell Telephone Company." This conclusory statement preserves nothing for review since it does not comply with Rule 84.04(d), requiring a point relied on to state wherein and *why* the trial court erred. The rule is to be strictly applied. *Long v. Lincoln*, 528 S.W.2d 512[1, 2] (Mo.App.1975). Compare *Bennett v. Kitchen*, 400 S.W.2d 97[1] (Mo. 1966), holding nothing is preserved for review by a point relied on stating without reasons that plaintiff was contributorily negligent. As in *State ex rel. State Highway Commission v. City of Sullivan*, 520 S.W.2d 186[10] (Mo.App.1975), the point is "obscure, abstract, unpersuasive" and does "not warrant discussion or consideration here."

■ *Plaintiff's Verdict Director.* Defendant Union Electric challenges plaintiff's verdict-directing instruction, basically because it authorized a verdict for plaintiff if Union Electric failed to *insulate* its wire even though Union Electric had adequately *isolated* the wire from probable human contact. Plaintiff contends Union Electric has not preserved the point for review. Not so. In its motion for new trial Union Electric contended plaintiff's verdict director misled and misdirected the jury by declaring it had a duty "to insulate the electric wire which was properly isolated." And, in its amended Point Relied On, Union Electric contends the instruction erred by failing to require "a finding on whether the wires . . . were properly *isolated* . . . a material controverted factual question." We look to the merits of Union Electric's challenge to plaintiff's verdict director.

As said, Union Electric contends the instruction directed a verdict against Union Electric if it failed to use ordinary care to insulate its high voltage wire, even though

Union Electric had otherwise exercised due care by isolating its wire so as to avoid an injury it could reasonably have anticipated. The instruction:

> Your verdict must be for the plaintiff and against Union Electric Company if you believe:
>
> First, there was an uninsulated, high voltage electric wire on the pole, and the guy wire had no insulator to prevent it from becoming a ground, and there was no warning sign of any kind on the pole, and
>
> Second, Union Electric Company knew or should have known that young children were likely to climb the pole, and
>
> Third, Union Electric Company knew or should have known of the conditions set out in paragraph first and realized or should have realized that such conditions involved an unreasonable risk of death or serious bodily harm to such children from electrical shock, and
>
> Fourth, plaintiff because of his youth did not realize that such a risk existed, and
>
> Fifth, the utility to Union Electric Company of maintaining such conditions set out in paragraph first and the burden of eliminating the danger were slight as compared with the risk to young children involved therein, and
>
> Sixth, Union Electric Company failed to use ordinary care either to insulate the electric wire or place an insulator in the guy wire or to maintain a warning sign on the pole which would be reasonably adequate to enable young children to protect themselves from the danger, and
>
> Seventh, as a direct result of such failure, plaintiff was injured,
>
> Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 9.

Note that this verdict director first conjunctively hypothesized the *undisputed* facts of Union Electric's uninsulated electric and guy wires *and* the absence of any warning sign. The instruction then directed a verdict for plaintiff if the jury believed Union Electric failed to use ordinary care by *either* of the evidentiary means of failing to insulate its electric wire *or* failing to insulate its guy wire *or* failing to maintain a warning sign. By this disjunctive phraseology the instruction authorized a verdict against Union Electric if the jury merely found it negligently failed to insulate its high voltage wire.

Union Electric strenuously argues its liability cannot be based solely on its failure to insulate its high tension line; that it could also discharge its duty of ordinary care to plaintiff by so isolating its wire as to avoid any injury it could reasonably have foreseen. That substantive point is soundly supported by Missouri decisions holding an electric utility may discharge its duty *either* by insulating its wires *or* by isolating them by placement beyond probable reach.[2]

As persuasively expressed in *Empire District Electric Co. v. Harris,* 82 F.2d 48 (Cir. Ct.App., 8th Cir., 1936), the defendant electric utility "was not confined to a choice of the means of avoiding danger and injury . . . It might as effectively use others, among which placing the danger out of probable reach is quite usual. That is why charged wires are placed on high poles. The same thought and action govern every parent in placing dangerous things where they reasonably think their children cannot get them."

The cited cases, however, dealt with the *submissibility* of an injured plaintiff's case. Here, in contrast, the issue is the propriety of plaintiff's verdict-directing instruction submitting the issue of Union Electric's liability under Restatement of Torts, § 339.

■ We examine that facet of Union Electric's liability. Our attractive nuisance doctrine has been replaced by adoption of Restatement of Torts, § 339. *Anderson v. Cahill,* 485 S.W.2d 76 (Mo.1972). Restatement eliminates the former "attractive nui-

---

2. *Burk v. Missouri Power & Light Company,* 420 S.W.2d 274[2–5] (Mo.1967); *Donovan v. Union Electric Co.,* 454 S.W.2d 623[2, 3] (Mo. App.1970); *Foote v. Scott-New Madrid-Mississippi Electric Co-op.,* 359 S.W.2d 40[3] (Mo. App.1962).

sance doctrine" requirement of showing the defendant maintained a visible condition that initially lured children into trespassing. For that, § 339 substitutes a requirement (clearly shown here as to Union Electric) that defendant has actual or constructive knowledge of the likelihood of trespassing children. Subsections (b) and (e) of Restatement, § 339, further require evidence that defendant realize or should realize probable danger to intermeddling children, and thereafter failed to exercise reasonable care to protect them. Thus, defendant's foreseeability of injury is an essential, initial element under § 339, just as it was under the attractive nuisance doctrine.[3] Foreseeability of injury, vel non, logically includes physical factors contributing to or detracting from the probability of injury to a trespassing child.[4]

■ Union Electric does not challenge the inclusion of noninsulation in plaintiff's verdict director. Instead, it contends the instruction erred by omitting a finding excusing it from liability if its wires were properly isolated, this because nonisolation was an essential element of plaintiff's case.

Considering its disjunctive phraseology as to Union Electric's duty, it told the jury Union Electric was liable if the jury believed the single evidentiary fact that it failed to use ordinary care to insulate its wire. That direction from the court would lead the jury to believe it should find against Union Electric without considering evidence that Union Electric had exercised ordinary care by adequately isolating its wire. We hold the instruction erred prejudicially by misdirecting.

*Submission on Ultimate Facts.* Since the case is being remanded for a new trial against Union Electric, we comment further on plaintiff's verdict director. Of necessity it was a not-in-MAI submission. Plaintiff's counsel cites no precise precedent in support of the verdict director, nor do we find any. The difficulty here is that plain-

tiff's verdict director, contrary to MAI Rule 70.01(e), submits Union Electric's liability on the evidentiary facts of insulation, etc., rather than on the *ultimate fact* of negligently maintaining a condition that was an unreasonable risk to plaintiff.

■ The adoption of MAI forged a major change in verdict-directing instructions. This change ended the old method of submitting detailed evidentiary facts and initiated the method of submitting "verdict directing instructions reduced to the ultimate issues." (See Report to Mo.Sup.Ct., MAI pp. xxiii, xxiv; Rule 70.01(a) and (e); and How to Use This Book, MAI p. L). This new principle of submitting ultimate issues is followed in MAI instructions, which set the framework for not-in-MAI instructions. *Leathem v. Longenecker,* 405 S.W.2d 873[5, 6] (Mo.1966). For examples, note the ultimate issue submissions in the Owner and Occupiers of Land Instructions, MAI 22.01 (Attractive Nuisance), MAI 22.02 (Dangerous Condition) and MAI 22.03 (Invitee Injured). For case law applying this principle of submitting ultimate rather than evidentiary facts, see *Zipp v. Gasen's Drug Stores, Inc.,* 449 S.W.2d 612[2–4] (Mo.1970), *Bonenberger v. Sears, Roebuck and Company,* 449 S.W.2d 385[4] (Mo.App.1969), and *Jackson v. Cherokee Drug Company,* 434 S.W.2d 257[4–5] (Mo.App.1968). (Under such a submission of the ultimate fact, the evidentiary facts are appropriate subjects for argument to the jury.)

■ Since we are ordering a new trial, we address Union Electric's additional challenge to plaintiff's verdict director on the ground it did not require a finding plaintiff had failed to realize the risk that confronted him. In essence, Union Electric argues that the verdict director erred by not following the language of paragraph Fourth of Restatement, § 339. Instead of using that precise language, plaintiff submitted: "Fourth, plaintiff because of his youth did not realize that such a risk exist-

---

**3.** *Gladden v. Missouri Public Service Company,* 277 S.W.2d 510[10–13] (Mo.1955); *Donovan v. Union Electric Company,* 454 S.W.2d 623[4] (Mo.App.1970).

**4.** *Zuber v. Clarkson Const. Co.,* 363 Mo. 352, 251 S.W.2d 52[2–5] (1952).

ed." "Such a risk" was that referred to in paragraph Third of plaintiff's verdict director submitted as "an unreasonable risk of death or serious bodily harm to such children from electrical shock" created by conditions referred to in paragraph First. "Such children" referred to those described in paragraph Second whom Union Electric knew or should have known were likely to climb the pole. In instructing under Restatement, § 339, its language must be modified by submitting ultimate issues to fit the variety of ways by which children are injured. Considering plaintiff's verdict director as a whole we do not find it is subject to Union Electric's additional challenge.

*Trial Errors and Damages.* Union Electric raises two issues concerning trial evidence: Plaintiff's reference to the National Electrical Safety Code and expert testimony on the amount of plaintiff's probable loss of earnings. Plaintiff counters by contending the issues were not timely raised in the trial court. On retrial, it is unlikely there two issues will arise in the same context, and we therefore decline to rule either point. Union Electric also contends plaintiff's $1,350,000 verdict was excessive. We will not address that issue since the cause is being remanded for a new trial on all issues. Declining to pass on these points accords with the words of Judge Lamm in *West v. Spencer,* 238 Mo. 65, 141 S.W. 586[2] (1911): "It is a good rule not to decide to-day what you might better decide to-morrow."

Judgment against Southwestern Bell Telephone Company is reversed; judgment against Union Electric Company is reversed and the cause is remanded for a new trial on all issues. Since each defendant prevailed on appeal, costs in accordance with Rule 77.16, are to be taxed against plaintiff.

SMITH and WEIER, JJ., concur.