## NORA M. MAJORS, Appellant, v. OZARK POWER & WATER COMPANY, Respondent.

### Springfield Court of Appeals, June 5, 1920.

1. **EVIDENCE: Judicial Notice Taken that Electric Wire Insulation will not Withstand Shock of Tree Falling on it.** Judicial knowledge is taken of the fact that the insulation on electric wires is a covering of fiber and material that will not withstand such tremendous shocks as that caused to the wire by the falling on it of a tree eighteen inches in diameter and fifty feet high.

2. **NEGLIGENCE: Jury Case Defined.** A case should not be submitted to a jury where under the testimony the cause of the action is merely conjectural, and there must be some evidence of a causal connection between the act complained of and the injury.

3. **ELECTRICITY: Lack of Insulation Held not Proximate Cause of Death.** Lack of insulation *held* not proximate cause of death of one coming in contact with electric power wire, knocked down by the felling across it of a fifty-foot tree, with its base forty feet away in a yard.

4. **NEGLIGENCE: Proximate Cause of Injury Defined.** If the injury as occasioned was not one which could have reasonably been anticipated as a sequence of the alleged negligent act, then the alleged negligent act was not in law the proximate cause of the injury, and no recovery can be had therefor.

5. **APPEAL AND ERROR: Appellant without Standing where Saving no Objection or Exception to Direction of Verdict.** In death case, where, after the court gave directed instruction for defendant, without more plaintiff took a nonsuit, and there was no objection or exception saved to such action, the appellate court could not interfere with the judgment.

205 App.—22

Appeal from Jasper County Circuit Court.—*Hon. Grant Emerson*, Judge.

Affirmed.

*D. S. Mayhew* and *J. Olin Biggs* for appellant.

(1) Persons· who· for their own private gain or profit send a dangerous agency, electricity, out into the streets and alleys of the city are bound to use the utmost care in preventing the escape from the wires of the electrical current to the injury of others. Geismann v. Mo.-Edison Electric Co., 173 Mo. 678; Thompson on Negligence, (2 Ed.), 797. (2) Such persons are bound to the utmost care in inspecting its wires, carrying the electrical current and to remove or remedy any defects thereon, no matter how created or by whose fault. Winkleman v. Elec. Light Co., 110 Mo. App. 184; Thompson on Negligence, sec. 802. (3) The doctrine of concurrent negligence is firmly rooted in the jurisprudence of this State. A defendant may be liable even if the accident was not caused by his sole negligence. He is liable if his negligence concurred with that of another, or with an act of God, or with an inanimate cause, and become a part of the direct and proximate cause of the injury. Harrison v. K. C. E. L. Co., 195 Mo. 606; Ganahl v. U. Ry. Co., 177 Mo. App. 511; Dameschoky v. Suhle, 195 Mo. App. 478; Newcomb v. N. Y. C. & H. R. Ry. Co., 169 Mo. 442; Thompson v. City of Slater, 197 Mo. App. 261; Buckner v. Horse & Mule Co., 221 Mo. 700. (4) It is the duty of a company engaged in supplying electricity to consumers to use every precaution to insulate its wires at all points where people have a right to go, and to use the utmost care to keep them so insulated, and for a failure to take such precaution it is liable in damages for personal injuries to a person who is in a place where he had a right to be, unless such person was guilty of negligence on his part, directly contributory thereto. Geismann v. Mo.-Edison E. L. Co., 173 Mo., 654.

*A. E. Spencer* for respondent.

(1) At the conclusion of plaintiff's evidence the court announced that he would instruct the jury that plaintiff could not recover. Whereupon plaintiff took a non-suit with leave. No exception was saved to this action of the court. For this reason the ruling of the court in that matter cannot be reviewed in this appeal. The only question raised by the appellant is the correctness of the court's action, in giving such instructions. Lewis v. Center Creek Mining Co., 199 Mo. 463; Arnold v. Insurance Co., 167 Mo. App. 154; Montei v. Railroad Co., 130 Mo. App. 149; Carter v. O'Neill, 102 Mo. App. 391; McClure v. Campbell, 148 Mo. 96. (2) Even if defendant's wires were defectively insulated, or even uninsulated wires, this condition was not the proximate cause of the injury, and defendant is not liable. Mathiason v. Mayer, 90 Mo. 585; Luehrmann v. Gas Co., 127 Mo. App. 213; Foley v. McMahon, 114 Mo. App. 442; Brubaker v. Light Co., 130 Mo. App. 439; Williams v. Company, 187 S. W. 556, and 274 Mo. 1; Brown v. Railway, 20 Mo. App. 222; Henry v. Railway, 76 Mo. 288; Washburn v. Light Co., 214 S. W. 410. Gilliland v. Railway, 19 Mo. App. 411; Geroski v. Light Co., 247 Pa. 304, 93 Atl. 338. Seith v. Company, 241 Ill. 252, 89 N. E. 425; Brush El. Lt. Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640; Leeds v. Company, 178 N. Y. 118, 70 N. E. 219; Consolidated, etc., Co. v. Koepp, 64 Kas. 745; 68 Pac. 608; Kempf v. Railroad Co., 82 Wash. 263, 144 Pac. 77; Elliott v. Light Co., 204 Pa. 568, 54 Atl. 278; Stone v. Railroad Co., 171 Mass. 536, 51 N. E. 1; Mo. Pac. Ry. Co. v. Columbia, 65 Kas. 390, 69 Pac. 338; Cole v. German, etc. Society, 124 Fed. 113; Johnston v. Light Co., 78 Neb. 24, 110 N. W. 711; Southside Ry. Co. v. Trich, 117 Pa. 390, 11 Atl. 627; Glassey v. Ry. Co., 185 Mass. 315, 70 N. E. 199; Deisenrieter v. Co., 99 Wis. 279, 72 N. W. 735; Norfolk, etc. Co. v. Spratley, 103 Va. 377, 49 S. E. 50224; Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602.

FARRIINGTON, J.—The appellant brings her appeal from a judgment adverse to her rendered in the Circuit Court of Jasper County. The case made by her is that her husband was a common laborer, living in Peirce City, Missouri, and in the month of January or February, 1919, was engaged by Henry Mohlering to cut some large trees in the yard of the home of one Webber. Plaintiff's husband was killed while engaged in this work in the following manner: He, with several other men including Mohlering and Mohlering's brother, had cut one tree in Webber's yard, and after that cut down a tree which under the evidence was 18 inches in diameter and 50 feet high. They undertook to throw this tree in a certain direction but owing to the fact that it fell sooner than they anticipated and struck some other limbs, its top reached out into the street where it struck some high-powered electric current wires owned and maintained there by the defendant. Those wires were not insulated. There is evidence that there had been insulation on some of the wires in the past but it had rotted off and afforded no protection at the time of the injury. The top of this tree, when it struck the wires, crushed them to the ground, breaking one and holding the other two down to the ground. The wires prior to the time the tree fell upon them were maintained on poles out in the street about 40 feet from this tree, and from 20 to 30 feet up over the street or roadway. When the tree crushed down these wires a singing noise was made by the wires and Mohlering, who was in charge and the employer of plaintiff's husband, went into Webber's house to telephone the Company to cut off their electric current. Plaintiff's husband was at the stump of the tree, and while Mohlering was in the house telephoning he, Majors, walked up toward the top of the tree, through the limbs, and when he had gotten at a place some six or seven feet from where the wires were crushed down, he either stumbled or received a shock of electricity that caused him to lunge forward toward the wires. One of his hands, according to one of plaintiff's witnesses, struck the broken wire. Another witness for plaintiff testified that his hand went

forward and rested under one of the wires that was not broken. At any rate, he was gotten out by the workmen and died almost immediately.

The charge of negligence in the petition is that the defendant carelessly permitted its wires, which were strung on poles and were charged with electricity, to become bare by reason of the fact that the insulation on the wires had rotted off from long and constant use and permitted said wires to remain in that condition for a long time prior to the date of the injury, and all that it knew, or should have known by the exercise of ordinary care and caution, that the wires were bare and uninsulated and were therefore dangerous and deadly to human life to any one coming in contact therewith.

The answer was a general denial and a plea of contributory negligence.

At the end of plaintiff's evidence the defendant offered an instruction to the court directing the jury to find the issues for the defendant, which the court gave. The record before us shows as follows: ''Thereupon the court instructs the jury that under the law and the evidence the plaintiff is not entitled to recover in this cause. Whereupon the plaintiff takes a non-suit with leave to move to set the same aside.'' The court afterwards overruled plaintiff's motion to set aside the non-suit, to which latter action of the court the plaintiff objected and excepted.

It is the contention of appellant that the defendant is answerable for this injury under these circumstances, because of the fact that it had failed to properly insulate these wires.

Without going into the question of whether plaintiff's husband was guilty of contributory negligence, as a matter of law, in leaving his place by the stump of the fallen tree and going up into the branches of the tree where he came in contact with the wires, as we have set out, knowing that they were high-powered wires, were mashed down under the tree, we think that the action of the court in giving the instruction was proper, because plaintiff's

evidence had failed to make out a case of negligence against the defendant.

As a first proposition, we believe it would be nothing more than wild conjecture to hold that the failure to insulate the wires was the cause of plaintiff's husband meeting his death, with the weight and crash of a tree 50 feet high, with a diameter at its stump of 18 inches, falling upon and crushing to the ground these wires. To say that subjecting a properly and newly insulated wire to such a crash and force would have kept this wire in such condition as to have prevented the electricity from escaping as it did is purely conjectural. We take judicial knowledge that the insulation on electric wires is a covering of fiber and material that will not withstand such tremendous shocks as that caused to this wire by the tree falling upon it, and if the defendant is to be held for the death of this man the evidence must be sufficient to warrant a finding that the failure to insulate caused his death.

The law is well settled that a case should not be submitted to a jury where under the testimony the cause of the accident is merely conjectural. (29 Cyc., 631.) There must be some evidence of a causal connection between the act complained of as negligence and the injury. (Battles v. Railway Company, 178 Mo. App., l. c. 614, 161 S. W., 614, and cases cited therein).

We, therefore, hold in this case, with these wires subjected to the force of this falling tree, that it would be a mere conjecture to say that it was defendant's failure to insulate this wire that caused plaintiff's husband's death. On the other hand, the law is well established in this state, as declared in the very recent case of State ex rel. Ellison, 271 Mo., 463, l. c. 474, that if the injury, as occasioned, was not one which could have reasonably been anticipated as a sequence of the alleged negligent act, then the alleged negligent act was not in law the proximate cause of the injury and no recovery can be had therefor. Here we have the defendant company placing its wires from 20 to 30 feet high on poles out in a street. We do not think that it could reasonably be anticipated

that some one would cut down a shade tree, apparently strong and vigorous, in an adjoining yard from 40 to 50 feet away from these wires.

The last case cited quotes with approval from American Brewing Association v. Talbot, 141 Mo., l. c. 685, 42 S. W. 679, where it is held: "Numerous authorities hold that it is not negligence not to take precautionary measures to prevent an injury which, if taken, would have prevented it, when the injury could not reasonably have been anticipated and would not, unless under exceptional circumstances, have happened." It is certainly an exceptional occurrence for trees to be cut 40 or 50 feet from the street so as to fall across wires strung therein.

In 1 Thompson on Negligence, (2 Ed.), sec. 58, quoting from Lane v. Atlantic Works, 111 Mass. 139, the rule is stated.

"The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of injury. The test is to be found in the probable injurious consequences which were to be anticipated; not in the number of subsequent events and agencies which might arise. And this principle will apply to a case where a catastrophe has been brought about by any intervening agency, having no connection with the act of the original actor, whether such agency be the act of a third person or a catastrophe of nature. Thus, a nordinance of a borough regulating the speed of electric cars, was violated, and, in consequence of the violation, the car was at a given point upon the track of the defendant, where a tree fell as the car was passing under it, injuring the plaintiff. If the ordinance had been complied with, the car would have been on another point on the track at the time when the tree fell. The violation of the ordinance was not the proximate cause of the injury, since it could not be foreseen that the tree would fall, or that it would fall at any particular point of time; and hence, so far as human foresight could go, the violation of the ordinance

might have prevented, as well as produced the catastrophe.''

Our attention is called to the case of Harrison v. K. C. Electric Light Co., 195 Mo. 606, 93 S. W. 951, where the Company was held on the showing that it knew that its electric line was grounded and without discovering where it was, it turned on this powerful and deadly current, which negligent act, coupled with the act of the deceased's son caused the injury.

Again, in the case of Williams v. Company, 274 Mo. 1, 187 S. W., 556, the Supreme Court, in reversing a judgment of this court, held that the Company was liable because they must anticipate that boys will climb up in trees; that held to a knowledge of this, companies or persons dealing with electricity must guard against injuring those who exercise this prehistoric and probably inherited trait. It would be going far, however, to hold that reasonable and prudent people, exercising the highest degree of care, must anticipate that shade trees located in yards along the streets will be chopped down so as to fall across the wires. (Luchrmann v. Laclede Gas Light Co., 127 Mo. App. 213, 104 S. W., 1128; Brubaker v. K. C. Elec. Light Co., 130 Mo. App., 438, 110 S. W. 12.).

For these reasons, we hold that plaintiff failed to make out a case of negligence against the defendant, and that the action of the trial court in giving the peremptory instruction was proper.

There is another reason, which is purely technical, that forbids any interference of the judgment in this case by this court, and that is shown by the record which we have heretofore set out. After the court gave the directed instruction to the jury, without more the plaintiff took a non-suit. There was no objection nor exception saved to such action. This, under all the decisions of our appellate courts is a vital omission in the preparation for an appeal. (See Lewis v. Mining Co., 199 Mo. 463, 97 S. W. 938; Arnold v. Insurance Company, 167 Mo. App. 154, 151 S. W. 190; Montei v. Railroad, 130 Mo. App. 149, 108 S. W.

1073; Carter v. O'Neill, 102 Mo. App. 391, 76 S. W. 717; McClure v. Campbell, 148 Mo. 96, 49 S. W. 881.]

The judgment of the trial court is affirmed.

*Sturgis, P. J.,* and *Bradley, J.,* concur.