Eva S. TELLIS, Plaintiff-Respondent,

v.

UNION ELECTRIC COMPANY, a corporation, Defendant-Appellant.

No. 36749.

Missouri Court of Appeals, St. Louis District, Division One.

Feb. 17, 1976.

Motion for Rehearing or Transfer Denied April 13, 1976.

Application to Transfer Denied June 14, 1976.

Keefe, Schlafly, Griesedieck & Ferrell, William H. Ferrell, Martin J. Toft, St. Louis, for defendant-appellant.

Klamen, Summers & Compton, Robert Summers, Daniel S. Hapke, Jr., Maureen Swihart, Clayton, for plaintiff-respondent.

McMILLIAN, Judge.

A jury awarded plaintiff, Eva S. Tellis, $50,000 damages against defendant, Union Electric Company (Union Electric), a corporation, for the wrongful death of her husband, Joseph Tellis, who was electrocuted when the boom on a truck being operated by him came into contact with an overhead uninsulated electric wire. Union Electric appeals from the court's entry of judgment on the verdict.

Union Electric contends that the trial court erred in that (1) plaintiff failed to make a submissible case because the evidence failed to establish foreseeability, (2) the evidence showed the decedent to be contributorily negligent as a matter of law; and (3) the plaintiff's verdict director was erroneous. Since we hold that plaintiff's decedent was contributorily negligent as a matter of law, we reverse and remand with instructions to the trial court to enter judgment for defendant without any discussion of point number three.

In considering the question of negligence and contributory negligence, we view the evidence from the standpoint favorable to plaintiff, give plaintiff the benefit of all reasonable inferences therefrom, give plaintiff the benefit of any of defendant's evidence favorable to plaintiff and not contrary to the fundamental theory of her case, and disregard defendant's evidence unfavorable to plaintiff. *Donovan v. Union Elec. Co.*, 454 S.W.2d 623[1] (Mo.App.1970).

From the evidence the jury could have reasonably found the plaintiff's decedent, Joseph Tellis, age 52, drove and operated a boom type truck for an independent contractor, who sold and supplied concrete and brick products. On the morning of July 17, 1972, decedent delivered three to five pallets of blocks to the residence of Richard Chapman, who lived on Park Court in Maryland Heights, Missouri. The blocks were to be used for the construction of a swimming pool.

Since Park Court was a circular street and there was no driveway or roadway to the back of the Chapman home, access to the rear could only be made by driving through a ball field or park which was to the north of Chapman's rear fence. Marvin Wyatt, an employee of Chapman, gave decedent directions on how to get to the rear of the Chapman home.

The swimming pool excavation was between the fence and the back of the Chapman home. At the northern edge of the swimming hole excavation were two electric lines; one, an uninsulated primary line, twenty-five feet above ground, carrying 7200 volts, the other, a parallel secondary line, eighteen feet above ground, carrying 240 volts. The span between the two poles by which the wires were suspended was one hundred eighty feet. Both lines exceeded the height standards for overhead electric distribution lines established by the National Electric Safety Code.

The mast, to which the boom was attached, extended from the bed of the truck to a point twelve feet, four inches above the ground. The boom was eighteen feet long.

The maximum height of the boom above ground level was twenty-seven feet, six

inches. On the top preliminary line was a burn mark at a point eighteen feet, ten inches above the ground—three feet, ten inches above the code minimum standards. A twelve inch burn mark was on the top right hand side of the tip of the boom.

From the exhibits offered by both parties, in plain view was a large transformer on the pole suspended by the two wires located at the northeast corner of the Chapman's fence line. Tellis' boom came into contact with the primary line at a point sixty-seven feet, six inches west of the transformer.

On the morning in question, the decedent first attempted to deliver a pallet of blocks into the excavation by inserting the boom between the rear fence and the parallel secondary wire. Because Tellis was unable to successfully complete this maneuver, Chapman removed the rear fence. After the removal of the fence, the decedent, with the boom almost in a horizontal position successfully placed the pallet of blocks into the excavation. The next load, however, was to be placed on top of the first. In attempting to place the second pallet of blocks the decedent placed the boom between the primary (top) line and the secondary (lower) line. During this maneuver, the boom came into contact with the top line, which resulted in Tellis' death. Neither Chapman nor Wyatt saw what caused the contact.

Chapman testified that not only did decedent, prior to making a delivery of the blocks, look at the wires but also that he told decedent about the wires and warned him to stay away from them and to be "awfully careful of them."

Both Chapman and Wyatt testified that four to six times, during the first and second deliveries of pallets of blocks, the boom swayed three to four feet. Each time Tellis corrected the swaying, but every two to three minutes the swaying would recur. Neither, however, was able to testify as to what happened on the third and fatal delivery. Both agreed that when the injury occurred the boom was in contact with the higher primary wire.

Our first concern is whether plaintiff made a submissible case of primary negligence against Union Electric.

In *Donovan v. Union Elec.*, 454 S.W.2d 623, 626 (Mo.App.1970), citing with approval *Foote v. Scott-New Madrid-Mississippi Elec. Co-op.*, 359 S.W.2d 40, 43 (Mo. App.1962), we held that an electric company is not an insurer of the safety of persons and its liability is determinable upon principles of negligence. In this regard, Union Electric is obligated to exercise the highest degree of care either to insulate its transmission lines adequately or to isolate them effectively wherever it reasonably may be anticipated that others may lawfully come into close proximity to its lines and thereby may be subjected to a reasonable likelihood of injury. *Erbes v. Union Elec. Co.*, 353 S.W.2d 659 (Mo.1962). In short, the law requires Union Electric to use the highest degree of care to prevent injury which it could reasonably anticipate.

While anticipation, or foreseeability, of harm because of acts or omissions of Union Electric is an essential element in determining liability, *Gladden v. Missouri Public Service Co.*, 277 S.W.2d 510 (Mo. 1965), it is unnecessary that Union Electric anticipate either the exact injury or the exact manner in which the injury occur. *Lebow v. Missouri Public Svc. Co.*, 270 S.W.2d 713 (Mo.1954).

In *Foote*, we held that test to establish the element of foreseeability by a defendant is whether the jury could have fairly found that, in the exercise of the highest degree of care, a defendant could have reasonably anticipated that some injury was likely to have occurred to one lawfully near its transmission line. In *Hamilton v. Laclede Elec. Co-op.*, 294 S.W.2d 11, 14 (Mo. 1965), the court held, however, that even where the highest degree of care is demanded of an electric utility company, it is only bound to guard against those occurrences which can be reasonably anticipated by the utmost foresight.

From our review of the evidence, we hold that plaintiff's evidence did establish a

case of primary negligence against Union Electric. The evidence that influenced our conclusion is that the area where decedent met his untimely death was a populous residential area; that the electrical wire which caused the decedent's death was uninsulated and carried 7200 volts of electricity; that Union Electric knew that the Chapman residence was in a residential and populous area; that Union Electric knew that boom trucks, prior to 17 July 1972, were used in residential areas for building and remodeling purposes; that Union Electric knew of three similar accidents in the Maryland Heights area; and that Union Electric's reliance upon *Majors v. Ozark Power & Water Co.*, 205 Mo.App. 337, 222 S.W. 501 (1920) and the *Foote* and *Donovan* cases is misplaced.

In *Majors*, which was not a boom contact case, plaintiff's husband who was standing near the stump of the tree when it fell, walked voluntarily toward the top of the tree lying in the street and somehow came into contact with the live wires that had been broken as the tree fell. One of the bases for the court's decision, sustaining the directed verdict for the utility company, was that it was not reasonably foreseeable that a healthy shade tree located in a yard forty feet from the street where the utility's wires were suspended, twenty to thirty feet above the ground, would be chopped down so as to fall directly against the utility's lines and break them. Hence, the *Majors* case is of no help.

The *Foote* case, likewise, is not helpful. First, it is not a boom contact case. Secondly, it involved a sixteen year old boy who capriciously tossed a copper wire attached to a tin can, twenty-five feet in the air, over a 7200 volt uninsulated line. The court held, and justly so, that a submissible case on foreseeability was not made because the utility could not have anticipated that an uninsulated wire, twenty-five feet above ground, in a rural area would cause injury to a child who playfully threw a copper wire onto an overhead wire. In our case,

the unfortunate tragedy occurred in a populous residential area, and the plaintiff's decedent was engaged in his employment, whereas in *Foote* the child in question was not performing any necessary task.

While *Donovan* is a boom contact case, the casualty there occurred in a farm land area. The voltage wires were twenty-five feet from the ground, and there was no evidence of any residences or other buildings around other than the barn, shed, and office, which had formerly been a farm house. Here not only was the Chapman home in a populous residential area, but also, unlike the *Donovan* case, Union Electric knew boom type trucks were used in the area, and it had knowledge of similar type accidents. To this extent *Donovan* is distinguishable.

Consequently, we hold that under the circumstances shown herein, Union Electric could have reasonably anticipated that decedent, who was lawfully upon the premises in a populous residential area was likely to be injured as a result of contact with Union Electric's uninsulated wires.

Next, we consider Union Electric's contention that decedent's conduct amounted to contributory negligence as a matter of law.

■ Under our law in electricity cases, contributory negligence is a question of fact or a mixed question of law and fact for the jury to decide, unless there is a finding that the injured person had actual or constructive knowledge of the danger and a finding of some voluntary act by the injured person which placed him in contact with the wire. *Arkansas-Missouri Power Co. v. Carl*, 280 F.2d 7 (8th Cir. 1960); *Losh v. Ozark Border Elec. Co-op.*, 330 S.W.2d 847 (Mo.1960).

■ In *Hamilton v. Laclede Elec. Co-op.*, supra, l. c. 17, the court quoted with approval the following pronouncements:

"Persons of ordinary intelligence are presumed to know the dangers attending

contact with wires electrically charged.[1] . . ."

" 'When the negligent act of the plaintiff is necessary to make a dangerous situation negligently created by the defendant effective in harm, the plaintiff's negligence is always a contributory factor in producing his harm and as such prevents him from recovery against the negligent defendant.' "[2]

The law imposes upon a person, *sui juris*, the obligation to use ordinary care for his own protection, the degree of which is commensurate with the danger to be avoided; and one who voluntarily and unnecessarily assumes a position of danger, the hazard of which he understands and appreciates, cannot recover for an injury from a risk incident to the position.[3]

◼ In our case, while it is true that no one specifically told decedent that the two overhead wires were electric wires, on at least two occasions he looked at the wires and was aware of their presence. That he was aware can also be demonstrated by the fact that on the first attempted delivery of the pallet of blocks, he was unable to make the delivery below the secondary wire because of the fence. On the second attempt with the fence removed by putting the boom in a horizontal position below the secondary wire, he completed his mission. Moreover, at the time he was electrocuted the boom had been placed between the two wires. Not only did the evidence show that decedent was aware of the presence of the wires but also that he was warned by Chapman who told him to stay away from the wires and to be "awfully careful of them." Also, in plain view, sixty-seven feet away from the point of contact of the boom with the transmission wire was a large metallic transformer approximately on the same level as the secondary wire. From the above evidence, we find that decedent, an experienced boom operator, had actual knowledge of the overhead wires, and, being a person of ordinary intelligence, he was presumed to know the dangers attending contact with electrical wires.

◼ In reaching our conclusion we note that decedent chose to attempt delivery of the pallet of blocks high in the air by going through energized electric wires. The plaintiff's own evidence shows that there was a reasonable alternative course as was demonstrated by the manner in which the blocks were delivered after the injury.[4] More important, however, is that Chapman and decedent discussed the alternative method prior to the attempted delivery and recognized the attendant danger. Decedent selected his own means of accomplishing his task, and chose to continue to use the boom even though immediately prior to his injury he knew the boom was swaying three to four feet every three or four minutes. Therefore, voluntarily inserting a potentially defective metal boom between the known danger of two energized wires constituted contributory negligence as a matter of law. See *Hamilton v. Laclede Elec. Co-op.*, supra, and *Coleman v. North Kansas City Elec. Co.*, 298 S.W.2d 362 (Mo.1957).

◼ Plaintiff argues vigorously that no case ever held a person to be contributorily negligent as a matter of law where there was no eyewitness to the casualty, citing for this proposition, *Pulsifer v. City of Albany*, 226 Mo.App. 529, 47 S.W.2d 233 (1931) and *Privette v. City of West Plains*, 93 S.W.2d 251 (Mo.App.1936).

In the *Pulsifer* case, two boys, Pulsifer and Fitzsimmons, who had been scattering wheat shock in a field, were found lying unconscious on the ground in contact with an electric wire. Fitzsimmons was dead, and Pulsifer, who never regained consciousness died later. There was no eyewitness as to how or why they came into contact

---

**1.** 29 C.J.S. Electricity § 66 3.

**2.** 2 Restatement, Torts 1251, 1252, § 478.

**3.** See 38 Am.Jur., Negligence, § 32.

**4.** Blocks were handloaded from truck, placed outside the pool, and hand carried into the excavation.

with the wire. The court held that a reasonable inference to be drawn from the condition in which Pulsifer was found was that Fitzsimmons may have first come into contact with the wire and Pulsifer, with a gloved hand, attempted to come to his aid.

The *Privette* case involved a telephone lineman who, while searching for trouble on the line, came upon an uninsulated electric wire at a point where the telephone line he was inspecting crossed the electric wire. Thereafter he lowered his cable car, discussed the problem with his helper, and concluded to use another method to inspect the line rather than attempt to ride past the uninsulated wires in the cable car. Privette obtained a ladder from his company and returned and placed the ladder against his cable car and the messenger strand away from the electric wire. He climbed the ladder and fastened the cable car to the strand still away from the electric wires and above them. As Privette grasped the messenger wires and attempted to swing himself into the cable car and away from the electric wires, the ladder shook and he screamed. When his helper looked up Privette's knees were crouched and he was leaning back in a falling position with the messenger wire in one hand and one of the electric wires in the other. He hung for a moment, turned loose the messenger wire, swung on the electric wire in a falling position, and then fell to the ground.

Both the *Pulsifer* and the *Privette* cases are factually distinguishable from the instant case. Both stated that, on the question of contributory negligence, the rule is that a party is presumed to have exercised due care for his own safety and that the burden rested upon defendant to prove the party guilty of contributory negligence. And, under the peculiar circumstances of each case, contributory negligence was held to be a jury question. Here, we find that Union Electric met its burden of proof of decedent's contributory negligence. Neither of those two cases involved a situation where a party would not have been injured but for his own reckless disregard of his personal safety by voluntarily and unnecessarily placing himself in a dangerous situation, fully knowing and realizing the danger of such situation and the hazard to which he was exposing himself. *Morris v. Kansas City Light & Power Co.*, 302 Mo. 475, 258 S.W. 431, 433[5] (1924).

Judgment is reversed with directions to the trial court to set aside its judgment and enter judgment for the defendant.

WEIER, P. J. and SMITH, J., concur.