**Robert L. CHAMBERS,
Plaintiff-Respondent,**

v.

**Susan Gail BUNKER,
Defendant-Appellant.**

No. 11230.

Missouri Court of Appeals,
Southern District,
Division Three.

April 23, 1980.

Ronald L. Little, Little, Million, Terando & Clarkson, Poplar Bluff, for plaintiff-respondent.

Manuel Drumm, Drumm & Leible, Sikeston, for defendant-appellant.

TITUS, Presiding Judge.

A Butler County jury, via a verdict signed by nine of its members, awarded plaintiff $20,000 in damages for injuries received and expenses incurred as the result of a vehicular accident which occurred the afternoon of November 2, 1976, in the City of Poplar Bluff at the intersection of north-south Garfield Street and east-west Jefferson Street. When defendant's motion for a new trial was denied, she appealed.

The collision occurred as plaintiff was driving a Buick south on Garfield and defendant was driving a Chevrolet west on Jefferson. When the cars entered the intersection of the two streets, the front of defendant's Chevrolet struck the left back side of the Buick and somehow caused the rear of the Buick to become lodged atop the hood of the Chevrolet. In this position, the two cars continued to the southwest corner of the intersection and partially up a hill or embankment at that location before stopping. What happened thereafter constitutes the crux of the issues on appeal and

may best be explained by a partial *in haec verba* recitation of the testimony of the parties.

*Plaintiff's Testimony*: "Q. . . . what happened to the car after you went up there? A. On the side of the hill? Q. Yes. A. She got out of the car. Q. Where was her car then? A. Up under my car. Q. And then what happened? A. I told her to put [her] car in park where it would hold, where she wouldn't slide down the hill, and when she went to put it in park, she let it roll back and jumped out. Q. Jumped out of the car. A. Yes, sir. Q. What happened then? A. Then the cars rolled backwards across the street and hit the other car that was parked [at the northeast corner of the intersection]. Q. What was the position of the cars when they finally came to rest across the street? A. The same position they were as they were on the hill. Q. And what position was that? A. My car was on the hood of her car.

*Defendant's Testimony*: "Q. . . . As I understand it, your car and the [plaintiff's] car came into contact and had a collision, is that right? A. Right. Q. What happened to them or where did they go from the time that they first came together until the end of the—A. They slid back into another parked car. Q. . . . Would you go to . . . Exhibit A up there, and show the Jury just where the cars went? A. When we crashed, we were about there, and we rolled back to the car that was parked right there."

It is of further interest to note that plaintiff's treating physician, the only medical witness at trial, testified concerning his opinion as to the cause of plaintiff's injuries, disabilities, etc., without a single objection from defendant. When asked for his opinion as to the cause for plaintiff's injuries and disabilities, the doctor answered: "That was a result of his injury in the automobile accident."

Two instructions given for plaintiff (instructions numbered 2 and 7) are also involved in this appeal. They are:

"INSTRUCTION No. 2: Your verdict must be for plaintiff if you believe: First, defendant failed to yield the right-of-way, and Second, defendant was thereby negligent, and Third, as a direct result of such negligence plaintiff sustained damage, unless you believe plaintiff is not entitled to recover by reason of Instruction Number 3. Plaintiff M.A.I. 17.-01, 17.08.[1]

"INSTRUCTION No. 7: If you find the issues in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence. Plaintiff M.A.I. 4.01."

The third section of defendant's brief is mislabeled "Points and Authorities" contrary to the mandates of Rule 84.04(a) and (d).[2] Nevertheless, the points relied on read as follows:

"I. The trial court erred in giving Instruction No. 7 without modifying same by failing to describe the compensable event or collision when all of the evidence in the case disclosed there were actually two separate events or collisions which may have caused [plaintiff's] injuries and damages. Instruction No. 7 should have substituted the words 'as a direct result of the conduct of defendant as submitted in Instruction No. 2' for the words 'as a direct result of the occurrence mentioned in the evidence.' The failure of the court so to modify Instruction No. 7 was reversible error in that the jury was not required to find which collision caused [plaintiff's] injuries and damages. The jury was erroneously allowed to award damages to [plaintiff] for [defendant's]

failure to yield the right of way even if the damages resulted from the second collision with a third or parked vehicle.

"II. The court erred in submitting the case to the jury on Instruction No. 2 because the evidence in the case was not sufficient therefor in that [plaintiff] failed to prove the direct causal relationship between the alleged negligence (failure to yield the right of way) and the alleged injuries and damages in that: (a) The medical testimony only connected the injury to the automobile accident, when the evidence discloses two separate automobile accidents actually occurred. (b) The [plaintiff's] question regarding causation to Dr. Barbour failed to hypothesize sufficient facts upon which any credible or sufficient answer could establish the required causation between [defendant's] negligent act and [plaintiff's] damages. (c) Paragraph Third of Instruction No. 2 erroneously authorizes the jury to find [plaintiff] sustained damage as a direct result of [defendant's] negligence without sufficient evidence of direct causal connection between [defendant's] alleged failure to yield the right of way and [plaintiff's] injuries and damages."

As the second point relied on concerns any alleged deficiencies or shortcomings in Dr. Barbour's testimony, we once again observe that the doctor's testimony and professional opinions as to the cause of plaintiff's injuries[3] were received into evidence without a single objection or motion to strike being made thereto by defendant. In such cases defendant cannot successfully complain thereof on appeal. *Nichols v. Blake,* 418 S.W.2d 188, 191[7] (Mo.1967); *Barber v. M. F. A. Milling Co.,* 536 S.W.2d 208, 211[11] (Mo.App.1976); *Nutz v. Shepherd,* 490 S.W.2d 366, 372[13] (Mo.App. 1973).

---

1. References to MAI are to Missouri Approved Jury Instructions, 2d Ed.

2. References to rules are to Missouri Rules of Court, V.A.M.R.

3. We note that on redirect examination defendant objected to testimony from Dr. Barbour concerning whether plaintiff experienced pain. This is to be distinguished from the point being made here in regard to causation of plaintiff's injuries.

■ The "Notes on Use (1978 revision)" relative to MAI 4.01 (Instruction No. 7 herein) states, inter alia, that the "term 'occurrence' must be modified by substituting some descriptive phrase which specifically describes the compensable event in any case where the evidence discloses more than one event which is claimed to have caused plaintiff's injury or damages." Before this revision, the notes on use cautioned concerning the need for substituting "occurrence" with some descriptive term "where there is evidence that two different occurrences produced the injury with defendant being responsible for only one." As seen from the points relied on, supra, defendant's contentions anent alleged instruction errors are predicated upon her assumption that there were two independent occurrences and that she could only be liable for the first as that, or the initial collision, was the only casualty directly produced by her failure to yield the right-of-way. We disagree.

Without prolonging this opinion with a critique of each case relied on by defendant, it suffices to note that her citations concern either plaintiffs who had sustained injuries ·at the hands of persons other than defendant on dates and at places unrelated to the occurrence which was the subject of the involved lawsuit, or plaintiffs injured by independent forces resulting from causes not associated with defendant. Obviously the first type of case just mentioned has no application to the facts in this case, and, as subsequently explained, the second so-called collision of plaintiff's and defendant's automobiles with the third parked vehicle was not an intervening cause that would exonerate defendant from liability for any injuries plaintiff may have sustained in that collision.

■ An intervening efficient cause is defined as a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury. *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 719[9] (8th Cir.

1976). However, to properly regard an intervening cause as the proximate cause and the first cause as the remote cause, the chain of events must be so broken that they become independent and the result cannot be envisioned to be the natural and probable consequence of the primary cause or one which ought to have been anticipated. Also, an intervening cause must be a proximate cause flowing from a source not connected with the defendant. *Dickerson v. St. Louis Public Service Company*, 365 Mo. 738, 745–746, 286 S.W.2d 820, 824 (banc 1956); 65 C.J.S. Negligence § 111(1), pp. 1198–1204.

■ Among considerations important in determining whether an intervening force is a superseding cause, Restatement, Second, Torts § 442, defines a superseding cause as "(c) the fact that the intervening force is operating independently of any situation created by the actor's [defendant's] negligence, or, on the other hand, is or is not a normal result of such a situation; (d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act; (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him." As seen by the foregoing, an intervening efficient cause is one independent from defendant's negligence and a force produced by the act of a third person. Therefore, the omissions and acts of either party to a damage suit for personal injuries suffered by plaintiff cannot be a new and independent cause. Such new and independent cause must be ascribed to a third person or some outside agency operating to cause the injury. 65 C.J.S. Negligence § 111(2), at 1211. Also see, *Leposki v. Railway Express Agency, Inc.*, 297 F.2d 849, 850 (3d Cir. 1962); *Humble Oil & Refining Company v. Whitten*, 427 S.W.2d 313, 315 (Tex.1968); *Taylor v. Southwestern Bell Telephone Company*, 483 S.W.2d 330, 333–334 (Tex.Civ.App.1972); 57 Am.Jur.2d, Negligence, § 194, at 565.

208

In this case, the collision with the third car after the initial impact was not caused by a third party operating independently of the situation created by defendant's failure to yield the right-of-way. The only causes involved were those produced by plaintiff and defendant. Therefore, no intervening efficient cause was present to interrupt the chain of events set in force by defendant's negligence. There was but one occurrence, i. e., defendant's negligence which produced two combined events that collectively caused plaintiff's injuries and damages. The trial court did not err in giving the instructions of which defendant complains.

Judgment affirmed.

GREENE and PREWITT, JJ., concur.