**Donald D. CLARY and Evelyn Clary, Plaintiffs-Appellants,**

**v.**

**UNITED TELEPHONE COMPANY and Missouri Public Service Company, Defendants-Respondents.**

Nos. 13236, 13348.

Missouri Court of Appeals, Southern District, Division II.

April 20, 1984.

William H. McDonald, James B. Condry, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiffs-appellants.

Thomas N. Sterchi, Timothy S. Frets, Baker & Sterchi, Kansas City, for defendant-respondent United Telephone Co.

Thomas W. Wagstaff, Allan V. Hallquist, Cecelia G. Baty, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant-respondent Missouri Public Service Co.

MAUS, Presiding Judge.

By this action, plaintiffs Donald D. Clary (Clary) and Evelyn Clary, his wife, seek to recover for personal injuries received by Clary by reason of electrical shock. The injuries occurred while Clary was helping Frank Rice load and move hay purchased from James H. Raffurty (Raffurty) and James P. Raffurty. The injuries were received when Clary was on top of the load of hay and the tractor trailer was in the process of going through a gate or gap under telephone lines and electrical distribution lines. The telephone lines were the property of United Telephone Company (United). The electrical distribution lines were the property of Missouri Public Service Company (MPS). Rice, the Raffurtys, United and MPS are the defendants in this action. Upon the basis of contributory negligence, the trial court sustained motions for summary judgment in favor of United and MPS against Donald D. Clary and then against Evelyn Clary. Those orders were made final for the purpose of appeal. Rule 81.-06. Each plaintiff has appealed. The appeals have been consolidated.

The plaintiffs have filed a motion to reverse those judgments upon the basis of *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). That case adopted the concept of comparative negligence and apparently abolished the defense of contributory negligence. A consideration of the resulting status of the doctrine of contributory negligence and the related doctrine of proximate cause which are inexorably intertwined in this appeal is not necessary. In general, the effect of that case was withheld until after January 31, 1984. *Gustafson v. Benda*, supra. The summary judgments in question were entered long before that date. The renditions of those summary judgments where trials within the meaning of *Gustafson*. *Bell v. Garcia*, 639 S.W.2d 185 (Mo.App.1982). There are no circumstances calling for the earlier application of *Gustafson*. See *Hudson v. Carr*, 668 S.W.2d 68, Mo. banc 1984. The plaintiffs' motion is overruled. Their appeals will be considered upon the basis of the law prior to *Gustafson*.

The plaintiffs alleged numerous acts of negligence on the part of United and MPS. These acts included failure to maintain their lines at a proper height above the ground. For the purpose of these appeals, United and MPS each concede there was evidentiary material before the court to establish each was negligent. However, they contend that the evidentiary material establishes that Clary was contributorily negligent as a matter of law.

The rules for considering whether or not the evidentiary material supports the summary judgments are well established. *Parmer v. Bean*, 636 S.W.2d 691 (Mo.App. 1982). It is appropriate to observe the burden was upon United and MPS to show by unassailable proof they were entitled to the summary judgments as a matter of law. In determining if they have met that burden, this court must consider the evidentiary material in a light most favorable to the plaintiffs and accord them the benefit of any doubt. *Cahill v. Sho-Me Power Corp.*, 656 S.W.2d 327 (Mo.App.1983).

This court is, and the trial court was, faced with evidentiary material in excess of 900 pages. The deposition of Clary comprises 442 pages. He was separately examined by four different lawyers, principally by counsel for the respondents. He was subjected to intolerable, repetitive and argumentative questioning. Those 442 pages contain many garrulous, confusing and in part conflicting answers. It is difficult to sift the evidentiary material to glean the facts upon the basis of which this court must determine the plaintiffs' appeals. The briefs have not done so.

As noted, all factual issues arising from conflicting evidence in that mass of material must be resolved in favor of the plaintiffs. *Cahill v. Sho-Me Power Corp.,* supra. To determine this appeal upon the required basis, with the advantage of time not afforded the trial court, this court has carefully and laboriously analyzed the voluminous record. Under the applicable rules of review, a summary of the determinative facts is as follows.

Rice arranged to buy a tractor trailer load of hay from the Raffurtys. Upon a trade-work basis, Clary agreed to help him. On the day in question, Rice, with Clary along, drove his tractor-trailer unit to the Raffurtys' farm to pick up the hay.

At the farm, the normal access to the barn where the hay was stored was by a lane. However, the lane was too narrow and crooked for use by the tractor trailer. The only access for the tractor trailer was through a gate or gap under the lines of United and MPS. Those lines were on the same poles. The two telephone wires were mounted on the poles approximately 12 feet above the ground. Those lines sagged considerably between the poles. United had been asked to raise those lines, but failed to do so. The energized electrical wire and neutral wire of MPS were mounted on opposite ends of a 4–foot crossarm, approximately 16 feet above the ground.

Upon arriving at the Raffurty house, Rice and Clary were met by Raffurty and his son. Raffurty, with Clary as a passenger, drove his pickup to the barn by the route of the lane. Rice, accompanied and directed by the son, drove the tractor trailer along the route that passed under the lines in question. The telephone lines sagged so low they had to be lifted by a two-by-four over the exhaust stack.

When the hay was loaded, there was a general discussion among Clary, Rice and the two Raffurtys that in leaving the premises, the tractor trailer would encounter difficulty in passing under electric and telephone lines. The first was a single electric service line extending between two barns. The second would be the telephone and electric lines described above. It was agreed that Clary would remain on top of the hay to assist in the tractor trailer clearing these lines. When the tractor trailer reached the service electric line, that line caught on a corner of the hay. Clary, by means of a board, lifted the electric line. He stepped over it and then walked it to the rear of the trailer.

The tractor trailer then moved to the vicinity of the telephone and electric lines. It stopped with the cab approximately under those lines. The motor of the diesel tractor was left running. From the top of the load, Clary sighted the electric lines and saw they would clear the load by approximately 3 feet. There was then a general discussion concerning the telephone lines. It was agreed those lines had to be cut or in some fashion supported so the tractor trailer could pass underneath them. An understanding was reached that Raffurty would raise the telephone lines so that Clary could grasp them. It was impossible to raise those lines by a two-by-four for the hay to clear them because the board was not long enough and the lines were too heavy to be so supported. After the lines were raised and grasped by Clary, he would attempt to walk and stretch the lines so they could be dropped off the back of the load. As Clary testified, that would be "a heck of a stretch" but he would try to do so. If he was unable to do so, the tractor trailer would have to move in order for the load to clear the telephone lines. But, it was understood it was not to be

moved until it was determined that it could be done with safety for Clary. If Clary could not so stretch the lines, the tractor trailer was to be moved only when Clary had signaled.

Clary, on his knees, leaned down from the front of the top of the load. From this position, he was able to grasp the telephone lines when they were raised on the board by Raffurty. He lifted them, straightened and started walking backwards. When walking backwards, approaching the rear of the load, it occurred to Clary that he must step over the telephone lines. As he was doing so, without any signal from or notice to Clary, the tractor trailer was moved forward. The motor had been running and the hay was soft. Clary did not realize it was moving forward. He was dragged into the electric lines. Even after this occurred, and smoke was coming from his body and clothing, the tractor trailer continued to move forward. It stopped 20 or 30 feet from the electric and telephone lines. Clary was entangled in a line.

▪ As stated, United and MPS concede there is evidence of their negligence. But, they contend Clary's "voluntary exposure to a hazard known and appreciated" bars his recovery. *Calderone v. St. Joseph Light & Power Co.*, 557 S.W.2d 658, 665 (Mo.App.1977). To support their contention, those defendants cite evidence that there was no plan the tractor trailer would not move until Clary signaled or was off the load. They argue the inherent improbability of the Clarys' position. They presented much the same arguments to the trial court. Those arguments are persuasive. But, the summary judgments cannot be sustained upon the basis of the most probable of conflicting evidence. This court must consider the appeals upon the basis of the facts as outlined above. *Perkins v. Schicker*, 641 S.W.2d 432 (Mo.App. 1982).

It is established Clary knew of the presence of the telephone lines and the electric lines and the danger from them. Therefore, United and MPS argue that because he got on top of the load and voluntarily exposed himself to those lines, he is barred from recovery. They rely principally upon *Tellis v. Union Elec. Co.*, 536 S.W.2d 742 (Mo.App.1976). However, that case is not controlling. In it, there was no evidence of any need for the boom on the decedent's truck to be in the vicinity of the electric lines. Nor was there evidence of any precaution taken by the decedent to avoid contact with those lines.

▪ It has been appropriately observed that knowledge of that danger "does not mean, however, that a person is guilty of contributory negligence as a matter of law if he contacts a known electrical wire regardless of the circumstances and regardless of any precautions he may have taken to avoid the mishap." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 250 S.E.2d 255, 258 (1979). Or, stated another way, "[w]hile it is not negligence per se to work near a high voltage line, a person working near the line must exercise reasonable care to avoid coming into contact with it." *Partin v. Carolina Power and Light Co.*, 40 N.C.App. 630, 253 S.E.2d 605, 611–612 (1979). It is clearly the law in this state that it is not contributory negligence per se, regardless of the circumstances, to work in the vicinity of electric lines, even though the workman is aware of the lines and their danger. *Erbes v. Union Electric Company*, 353 S.W.2d 659 (Mo.1962); *Potter v. Sac-Osage Electric Cooperative, Inc.*, 335 S.W.2d 192 (Mo. 1960); *Lebow v. Missouri Public Service Company*, 270 S.W.2d 713 (Mo.1954); *Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491 (Mo.App.1982); *Robinett v. Kansas City Power & Light Company*, 484 S.W.2d 506 (Mo.App.1972). The issue of contributory negligence is dependent upon all of the factors involved in the situation. "The knowledge and experience of the injured party, the nature of his work, and the need for working in the vicinity of the line, whether the contact with the wires was the result of an inadvertent slip or other unexpected mishap, are factors which the appellate courts have considered as relevant and material in determining whether the work-

er was or was not guilty of contributory negligence as a matter of law." *Partin v. Carolina Power and Light Co.*, supra 253 S.E.2d, at 612–613. Other factors that may be considered are noted in the cases cited above. Also see Annot., Electric Power Company—Liability, 69 A.L.R.2d 93 (1960).

■ In this case it is significant there was no alternative route for the tractor trailer to leave the barn lot. *Robinett v. Kansas City Power & Light Company*, supra. The same is true of the fact Clary, while helping Rice, was carrying out a task that had been assigned to him. *Martin v. Fulton Iron Works Co.*, supra; *Cahill v. Sho-Me Power Corp.*, supra. A key factor is Clary's good faith belief that he could avoid contact with the electric lines. *Calderone v. St. Joseph Light & Power Co.*, supra. Clary was not bound to anticipate the negligence of Rice and/or Raffurty in causing the tractor trailer to move forward and carry him into those lines. *Highfill v. Brown*, 340 S.W.2d 656 (Mo. banc 1960); *White v. Burkeybile*, 386 S.W.2d 418 (Mo. 1965); *Kettler v. Hampton*, 365 S.W.2d 518 (Mo.1963). Clary was much in the same position as the workman who did not know a crane operator would give so much slack in the cable as to make it possible for contact to occur between the cable and high voltage lines. *Erbes v. Union Electric Company*, supra. The standard of care to which Clary was bound by his awareness of the electric wires was a relative standard requiring precaution commensurate with the dangers to be reasonably anticipated under the circumstances. Under the conflicting evidence and inferences, the determination of contributory negligence must be for the jury. *Wissman v. Wissman*, 575 S.W.2d 239 (Mo.App.1978).

■ United and MPS counter by contending the negligent movement of the tractor trailer was an intervening, insulating cause that prevents their negligence from being the proximate cause of Clary's injuries. "Proximate cause" deals not with causation in fact, but a limitation the law imposes upon the right to recover for the consequences of a negligent act. Prosser,

Law of Torts 3rd Ed. § 49 (1964); *Dix v. Motor Market, Inc.*, 540 S.W.2d 927 (Mo. App.1976). The term has received the following definitions. "Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant." *Floyd v. St. Louis Public Service Company*, 280 S.W.2d 74, 78 (Mo. 1955). The term an intervening resulting cause "is defined as a new and independent force which so interrupts the chain of events initiated by defendant's negligence as to become the responsible, direct, proximate cause of the injury.... However, to properly regard an intervening cause as the proximate cause and the first cause as the remote cause, the chain of events must be so broken that they become independent and the result cannot be envisioned to be the natural and probable consequence of the primary cause or one which ought to have been anticipated. Also, an intervening cause must be a proximate cause flowing from a source not connected with the defendant." *Chambers v. Bunker*, 598 S.W.2d 204, 207 (Mo.App.1980) (citation omitted). "The test of what was the proximate cause of the injury is whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant, not whether a reasonable person could have foreseen the particular injury." *Swindell v. J.A. Tobin Const. Co.*, 629 S.W.2d 536, 541 (Mo.App.1981).

■ In determining the issues of proximate cause and intervening, insulating cause, the courts of this state have consistently considered as persuasive the Restatement (Second) of Torts. *Chambers v. Bunker*, supra; *Morris v. Israel Brothers, Inc.*, 510 S.W.2d 437 (Mo.1974); *State ex rel. Blond v. Stubbs*, 485 S.W.2d 152 (Mo. App.1972); *Dix v. Motor Market, Inc.*, su-

pra. Restatement (Second) of Torts § 442 (1965) lists considerations of importance in determining whether an intervening force is a superseding cause of harm to another. It is sufficient to observe that four of the six considerations enumerated tend to establish that the negligence of Rice and/or Raffurty was not a superseding cause. Even further, the negligence of United and MPS comes within the provisions of Restatement (Second) of Torts § 442 B. It provides: "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct." Also see Restatement of Torts 2d § 443 and the Comments thereto. Again, "[p]roximate cause and intervening, efficient cause issues are for the jury when contradictory factual evidence is presented as to negligence and causation, and the facts presented are of such a nature and are so connected and related to each other, that the conclusion that the negligence charged was the proximate cause of the injury may be fairly inferred." *Swindell v. J.A. Tobin Const. Co.*, supra, at 541. Compare *State ex rel. Baldwin v. Gaertner*, 613 S.W.2d 638 (Mo. banc 1981); *Dickerson v. St. Louis Public Service Company*, 365 Mo. 738, 286 S.W.2d 820 (banc 1956); *Zuber v. Clarkson Const. Co.*, 363 Mo. 352, 251 S.W.2d 52 (1952); *Dix v. Motor Market, Inc.*, supra.

■ Finally, this court must regard two cases decided by the Supreme Court as controlling. In *Lebow v. Missouri Public Service Company*, supra, the plaintiff was employed to pick apples in the vicinity of an electric line that was known to and the danger of which was appreciated by him. He was using an aluminum ladder. The plaintiff jerked the ladder from a tree and unexpectedly brought it into contact with the electric line. It was held his recovery was not barred as a matter of law. In *Potter v. Sac-Osage Electric Cooperative, Inc.*, supra, a farmer attempted to install a piece of metal on the top of a bin and was shocked when he brought it into contact with an overhead electric wire. The next day his brother, fully aware of that event, was attempting to do substantially the same thing. He was electrocuted. Again, it was held that recovery for his death was not barred as a matter of law. A quotation from the first case mentioned is readily adaptable to this case. "Plaintiff's decedent had full knowledge of the existence and of the location of the power line, was fully aware of its danger, and particularly aware of his danger if the aluminum ladder came in contact with the wires. However, the jury reasonably could find from all the evidence that, in pulling the ladder loose from the entangling branches, it unexpectedly went back over Gerald's head into the wires." *Lebow v. Missouri Public Service Company*, supra, at 716. The evidentiary material does not establish by unassailable proof that Clary was guilty of contributory negligence. For similar cases from other jurisdictions see *Alabama Power Company v. Smith*, 273 Ala. 509, 142 So.2d 228 (1962); *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 652 P.2d 507 (banc 1982); *Padgett v. West Florida Elec. Coop., Inc.*, 417 So.2d 764 (Fla.App.1982); *Burke v. Illinois Power Co.*, 57 Ill.App.3d 498, 15 Ill.Dec. 670, 373 N.E.2d 1354 (1978); *Skoda v. West Penn Power Company*, 411 Pa. 323, 191 A.2d 822 (1963). The judgments are reversed.

HOGAN and PREWITT, JJ., concur.