In the ESTATE OF Taylor T. HARVEY, Appellant.

R.D. HARVEY and Harold D. Harvey, Jr., Intervenors/Appellants,

v.

Roger COOPER, Personal Representative of the Estate of Lelah M. Harvey, Respondent,

Children's Mercy Hospital, Intervenor/Respondent.

No. WD 41343.

Missouri Court of Appeals, Western District.

Sept. 26, 1989.

John R. Cady, Platte City, for appellant.

Thomas K. Thompson, Liberty, for respondent.

Keith W. Hicklin, Platte City, for intervenors R.D. Harvey and Harold D. Harvey, Jr.

William R. Price, Jr., Kansas City, for intervenor Children's Mercy Hosp.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

This is a dispute between the personal representatives of the respective estates of Taylor T. Harvey who died June 29, 1985 and of Lelah M. Harvey, wife of Taylor T. Harvey who survived him and died May 1, 1988, over the ownership of 39 municipal bearer bonds of the total value at the time of Taylor's death of $173,227.75. Of the 29 bonds whose denominations are shown in the record, 28 are for $5,000 and one is for $10,000. In a probate court proceeding to determine the ownership of the bonds, the court entered summary judgment awarding the bonds to the estate of the wife, Lelah M. Harvey. The personal representative of the Taylor T. Harvey estate has appealed, and also two intervenors who are beneficiaries of Taylor T. Harvey's will.

Taylor and Lelah had been married in 1966, when Lelah was 76 years old and Taylor 13 years younger. Lelah was in the better financial condition. She was the beneficiary of the substantial estate of her former husband, and perhaps had funds from other sources. The income tax returns of the parties show that most of the taxable income of the parties was derived from Lelah's investments. (This would not have included the municipal bond interest nor social security payments received by the parties.)

Lelah from time to time advanced funds to Taylor throughout the time of their marriage. For most of these advances there is no explanation, whether they were loans or gifts, and if loans whether they had been repaid. The record does not trace any of the advances into the bonds which are the subject of this lawsuit. There is no suggestion in the evidence of any fraud, deception or abuse of confidential relationship on Taylor's part.

The 39 municipal bearer bonds were found in Taylor's and Lelah's jointly rented safe deposit box after Taylor's death, with no indication whose they were. The bonds had been purchased by Taylor through his individual account with E.F. Hutton over a four-year period beginning in 1980. During this period Lelah was in a nursing home. Taylor was managing the business

affairs of both of them, although he sometimes consulted with Lelah and there is no evidence she was unaware of her business or of Taylor's management thereof. Probably only Taylor entered or removed items from the safe deposit box during this period.

In April 1985 Taylor was appointed Lelah's guardian. Before he filed an inventory of her estate he became ill and attorney Roger Cooper was appointed successor guardian. Taylor died, as earlier noted, on June 29, 1985.

■ The parties and the trial court have dealt with the 39 bonds as a single lot. It is not possible to deal with them in that way; each bond must be dealt with separately. They were purchased at different times over a four-year period, singly or in lots of no more than four. The bonds have different payment histories, as we will detail below.

As for 10 of the 39 bonds, there is no showing how they were paid for.

Two of the $5,000 bonds were paid for from Lelah's individual bank account for a total of $7,562.61.

Seven of the $5,000 bonds were paid for from the joint bank account of the parties, and part of the purchase price of ten others, for a total from the joint bank account of $39,098.36.

Part of the purchase price for six of the bonds was paid from an E.F. Hutton Cash Management account for a total of $14,211. It is not shown whose the E.F. Hutton Cash Management account was.

Two of the bonds were wholly paid for, and another eight partly paid for "by check", for a total of $24,089.09. There was no description of the checks, except that one $10,000 check was a certified check.

A total of $29,102.17 was paid in cash. Taylor was known as a secretive person who often dealt in cash.

A $10,000 bond was paid for by a $6,380 check on the Taylor T. Harvey Realty account, which was Taylor's individual account.

■ We note at the outset that summary judgment is appropriate only where "pleadings, depositions, answers to interrogatories, and admissions on file, together with the [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Supreme Court Rule 74.04(c). It is not sufficient for a summary judgment that the trial judge may believe that the evidence preponderates in favor of the motion for summary judgment. Rule 74.04; *Pettus v. Missouri Insurance Guaranty Ass'n*, 731 S.W.2d 527, 529 (Mo.App.1987); *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 115 (Mo.App.1986); *Clary v. United Telephone Co.*, 670 S.W.2d 936, 940 (Mo.App. 1984). We review the evidence in the light most favorable to the party against whom the summary judgment was granted. *Scott v. Thornton*, 484 S.W.2d 312, 314 (Mo.1972); *White v. American Republic Insurance*, 726 S.W.2d 357, 360 (Mo.App. 1987); *Fisher v. Scott & Fetzer Co.*, 664 S.W.2d 662, 663 (Mo.App.1984); *City of St. Joseph v. Kaw Valley Tunneling, Inc.*, 660 S.W.2d 26, 28 (Mo.App.1983). We hold that the circumstances shown by the evidence before the court do not show Lelah M. Harvey's ownership of the bonds with that degree of conclusiveness which justifies a summary judgment in her behalf.

While perhaps a circumstance to be considered along with all the other circumstances, section 362.487, RSMo 1986, provides that "[n]o presumption of ownership of the contents of any [jointly rented safe deposit] box shall be deemed to be created by the rental contract." *Estate of Gulat*, 748 S.W.2d 79, 81 (Mo.App.1988). The safe deposit box rental contract in this case contains a provision of the same import.

■ Respondents argue that the joint bank account funds used to pay for the bonds impresses the bonds with the same character as entireties property, so that Lelah succeeded to them upon Taylor's death by right of survivorship. While the fact of payment from entireties funds is one of those circumstances which must be considered by the fact finder, it does not

establish as a matter of law—even with respect to the seven bonds paid for wholly from joint account funds—that the bonds as a matter of law became entireties property. In *Hathman v. Waters*, 586 S.W.2d 376, 382 (Mo.App.1979), a wife argued that corporation stock bought by husband and paid for by monies withdrawn from a joint bank account was joint tenancy property. Judge Wasserstrom writing for this court said:

> Arzetta argues that this result must follow from the legal presumption that withdrawals by a husband from an account held jointly by the spouses presumptively becomes a resulting trust in favor of the wife. However, the presumption so relied on has been characterized as weak at best, and whether the withdrawal results in a gift or a trust depends upon intention as inferred from the particular facts of each case.

*Hathman*, 586 S.W.2d at 382 quotes from *Harrellson v. Barks*, 326 S.W.2d 351, 361 (Mo.App.1959), the following language:

> It would seem that the practical, and therefore better, rule to follow in regard to withdrawals from entirety accounts would be this: Where the withdrawals are partial and not obviously to obtain unfair ownership or advantage, and where the purpose of the withdrawal can reasonably be considered as one which could suit the wishes, purposes, and intention or consent of both the owners of the entirety account, and there is no apparent objection after the withdrawal is known, then the *presumption* should be that the withdrawal was by consent and agreement of the joint owners.

There is no indication in the evidence that Lelah did not consent to and approve the joint account withdrawals for Taylor's purchase of the bonds. The withdrawals from the joint account fund were partial. At the time of Taylor's death in 1985, as shown by the inventory of Lelah's incompetent estate filed shortly thereafter, there was a joint checking account balance of $128,249.69.

The strongest case that can be made for Lelah's ownership is made in the case of the two bonds paid for from Lelah's individual account, but even of these bonds the legal or equitable ownership is not conclusively proved by that single fact apart from the circumstances.

■ Respondents suggest that Taylor held the funds upon a constructive trust or a resulting trust for Lelah. Their argument goes as follows: Assuming that legal title to the bonds was in Taylor, then his use of Lelah's money to purchase the bonds (a fact which we have held *infra* is not established as a matter of law), he having occupied a confidential relationship with Lelah, must be held to establish a resulting trust or a constructive trust. The burden is upon Lelah's estate to prove such equitable claims by clear, cogent and convincing evidence; a mere preponderance of the evidence is not enough. *Fisher v. Miceli*, 291 S.W.2d 845, 848 (Mo.1956); *Meyer v. Meyer*, 285 S.W.2d 694, 699 (Mo. 1956); *Sassenrath v. Sassenrath*, 750 S.W.2d 95, 98 (Mo.App.1988); *Sauer v. Hicks*, 662 S.W.2d 310, 312 (Mo.App.1983).

Respondents in support of their constructive trust or resulting trust argument cite *Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982); *Perry v. Perry*, 484 S.W.2d 257, 259 (Mo.1972); *Sassenrath v. Sassenrath*, 750 S.W.2d 95, 98 (Mo.App.1988); *Hudson v. DeLonjay*, 732 S.W.2d 922, 929 (Mo.App.1987); *Iota Management Corp. v. Boulevard Investment Co.*, 731 S.W.2d 399, 414 (Mo.App.1987); *Sauer v. Hicks*, 662 S.W.2d 310, 311–12 (Mo.App.1983), cases which affirmed a lower court finding of a resulting trust or of a constructive trust after trial. To affirm such a finding after trial is a different thing from affirming a summary judgment. This record fails to establish as a matter of law that Taylor held these bonds upon a constructive trust or a resulting trust for Lelah, and fails to establish Lelah's estate's exclusive entitlement to the bonds upon any other theory. We do not hold that the evidence would not prima facie justify upon one theory or another a finding that the bonds belong to Lelah's estate; neither do we hold that it would. We do hold that the evidence before the trial court on the mo-

tion for summary judgment does not establish Lelah's ownership of the bonds at the time of her death as a matter of law. When we have said that, we have said that summary judgment under Rule 74.04(c) cannot stand upon appeal.

Judgment reversed and cause remanded for further proceedings.

All concur.